**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LARRY COUPEL, ET AL., APPELLANTS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-765** |
| **ANTHONY FALTERMAN, ET AL., APPELLEES** | **SECTION: "E" (4)** |

**ORDER AND REASONS**

Before the Court is an appeal filed by Appellants and debtors, Larry and Natalie Coupel, Rhebb Rybiski, Allen Woodward, and Dexter Ford (the "Coupels") of a bankruptcy court's decision.[1] Appellants filed a brief in support of their appeal.[2] Appellees Anthony Falterman, Bonne Swiller, Mark Falterman, Peggy Plakotos, Mary Elizabeth Shaver, Michael Small, James Small, and Ester Falterman (the "Falterman Heirs") filed a brief in opposition.[3] Appellants filed a reply.[4]

**BACKGROUND**

This appeal arises out of the facts and circumstances underlying state court litigation over a parcel of land in Assumption Parish, Louisiana. On June 22, 2016, the Falterman Heirs filed a petition naming the Coupels as defendants in Louisiana state court (the "State Court Action") regarding an ongoing dispute over approximately sixteen acres of land near Napoleonville, Louisiana (the "Disputed Property").[5] The Disputed Property and surrounding properties are landlocked, and historically have only been

[1] R. Doc. 1.
[2] R. Doc. 6.
[3] R. Doc. 7.
[4] R. Doc. 8.
[5] *See Coupel et al. v. Kfoury et al.* No. 23-01028, R. Doc. 1-1 (Bankr. E.D. La.) [hereinafter the *Adversary Proceeding*].

accessible via a road connected to State Highway 401 (the "Road").[6] In the State Court Action, the Falterman Heirs sought to have the court determine both their possession and their ownership of the Disputed Property, to have the court define the boundaries of the Disputed Property, and to have the court determine their rights to the Road.[7] On September 14, 2022, the Coupels filed a voluntary chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana, which stayed the State Court Action pursuant to 11 U.S.C. § 362(a).[8] In the bankruptcy proceeding, the Falterman Heirs initially moved the bankruptcy court to lift the stay and allow the State Court Action to proceed.[9] However, on August 31, 2023, the Falterman Heirs removed the State Court Action to the United States District Court for the Eastern District of Louisiana, which referred the matter to the bankruptcy court as an adversary proceeding.[10] The bankruptcy court consolidated the motion to lift stay and the adversary proceeding.[11]

On March 17 and 18, 2025, the bankruptcy court held a two-day trial to decide the claims made in the adversary proceeding, namely, the determination of both possession and ownership of the Disputed Property, the boundaries of the Disputed Property, and the rights associated with the Road.[12] On December 31, 2025, the bankruptcy court issued its Memorandum Opinion and Order.[13] In the order, the bankruptcy court judge made numerous findings of fact and conclusions of law. As relevant to this appeal, the bankruptcy court made the following finding of fact: that the Coupel's expert witness,

---

[6] *Adversary Proceeding*, R. Doc. 92 at p. 5.
[7] *Adversary Proceeding*, R. Doc. 1-1 at p. 2.
[8] *See In re Coupel*, No. 22-11060, R. Doc. 1 (Bankr. E.D. La.).
[9] *See id.* at R. Doc. 83.
[10] *See Adversary Proceeding*, R. Doc. 2.
[11] *Adversary Proceeding*, R. Doc. 4.
[12] *Adversary Proceeding,* R. Docs. 83, 84, and 86.
[13] *Adversary Proceeding*, R. Doc. 92.

surveyor Alan Woodard, was not credible.[14] As relevant to this appeal, the bankruptcy court made what it characterized as conclusions of law: (1) that the State Court Action was properly characterized as a request for a declaratory judgment;[15] (2) that the survey offered by the Falterman Heirs (the "Taracena Survey") confirmed the boundaries of the Disputed Property;[16] (3) that the Falterman Heirs own and possess the Disputed Property; and (4) that the Falterman Heirs established their right to a predial servitude over the road that allows access to the Disputed Property.[17] The same day, the bankruptcy court issued a Judgment on Complaint consistent with its Order.[18]

On January 14, 2026, the Coupels filed a motion for a new trial.[19] On March 25, 2026 the bankruptcy court held a hearing on the motion.[20] At the hearing, the bankruptcy court denied the motion, issuing a judgment to that effect on April 1, 2026.[21]

On April 14, 2026, the Coupels timely filed a Notice of Appeal to this Court, appealing the bankruptcy court's Judgment on Complaint and its Order denying the Coupel's motion for a new trial.[22]

Plaintiffs Larry Louis Coupel and Natalie Lombas Coupel filed the Designation of Record on Appeal and Statement of Issues "in proper person."[23] The Appellants' initial brief was filed by their counsel.[24] It is difficult to determine the errors assigned on appeal of the judgment or the denial of the new trial based on the Statement of Issues filed in

---

[14] *Adversary Proceeding*, R. Doc. 92 at p. 4.
[15] *Id.* at pp. 21-22.
[16] *Id.* at p. 27.
[17] *Id.* at p. 22-30.
[18] *Adversary Proceeding*, R. Doc. 93.
[19] *Adversary Proceeding*, R. Doc. 95.
[20] *Adversary Proceeding,* R. Doc. 101.
[21] *Id.*
[22] R. Doc. 1; *See Adversary Proceeding*, R. Docs. 93 and 101.
[23] R. Doc. 2 at p. 5.
[24] R. Doc. 6 at p. 1.

proper person, because the errors are not presented with clarity or specificity.[25] Neither did the brief submitted by counsel clearly set out the errors assigned on appeal.[26] Giving the Coupels the benefit of the doubt, the Court will analyze the Appellants' statement of issues and briefs as raising the following the issues on appeal: (1) whether the bankruptcy court erred in the judgment on complaint when it analyzed the Falterman Heirs' state court claim under La. C.C.P. 3654; (2) whether the bankruptcy court erred in the judgment on complaint when it declined to analyze the Coupels' claim to the Disputed Property under La. C.C. art. 3475; (3) whether the bankruptcy court erred in denying the Coupel's motion for a new trial.

## STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from final judgments of bankruptcy courts.[27] Rule 8002 of the Federal Rules of Bankruptcy Procedure requires that bankruptcy appeals to district courts shall be taken in the same manner as appeals from district courts to courts of appeals.[28] "Under 28 U.S.C. § 1334(b), a bankruptcy court has jurisdiction over 'all civil proceedings related to bankruptcy cases. A proceeding relates to a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the debtor's estate.'"[29]

"The standard of review for a bankruptcy appeal is the same standard used by an appellate court reviewing a district court proceeding."[30] For conclusions of law, the

[25] *See* R. Doc. 2 at pp. 4-5.
[26] R. Doc. 6.
[27] *See* 28 U.S.C. § 158(a).
[28] FED. R. BANKR. P. 8002.
[29] *Matter of Riverstone Resort, L.L.C.*, 122 F.4th 576, 581 (5th Cir. 2024) (citing *Natixis Funding Corp. v. GenOn Mid-Atl. Dev., L.L.C.,* 42 F.4th 523, 534 (5th Cir. 2022)).
[30] *In re Wallace, Rush, Schmidt, Inc.*, No. CV 23-00196, 2023 WL 6382610, at *2 (E.D. La. Sept. 29, 2023) (quoting *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989)).

bankruptcy court's decisions are reviewed *de novo*[31] while findings of fact are reviewed for clear error.[32]

Review of a bankruptcy court's finding of a mixed question of law and fact is more complicated.[33] It is clear that courts determining ownership of immovable property under Louisiana state law apply both factual and legal analyses. As a result, a determination of the ownership of immovable property must be treated as a mixed question of fact and law.[34] La. C.C.P. article 3654 further demonstrates the mixed nature of ownership determinations.[35] Under this article, when the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, the court must render judgment in favor of the party who proves better title to the immovable property or real right therein. To make this determination, the court must weigh factual evidence of possession and title documents against legal standards—including whether possession was in good faith, whether just title existed, and whether the requisite prescriptive period was met—before rendering a legal judgment on ownership.

The Supreme Court has explained that mixed questions of law and fact "are not all alike" and the standard of review for a mixed question depends on "whether answering it entails primarily legal or factual work."[36] The standard of review for a mixed question

---

[31] *In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014) (quoting *In re TransTexas Gas Corp.*, 597 F.3d 298, 304 (5th Cir. 2010)).
[32] *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577, 586 (E.D. La. 2008).
[33] In their brief, Appellants cite a federal First Circuit case law for the proposition that mixed questions of law and fact are reviewed for clear error, unless the analysis is "infected with legal error." *See* R. Doc. 6 at p. 9; *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir. 1993). The First Circuit's standard of review is not binding on this Court.
[34] An example of this is found in, La. C.C.P. art. 4847(A)(1), which excludes from the jurisdiction of parish and city courts any case involving title to immovable property because that determination involves both factual and legal findings. *Gandy v. Key Realty, LLC*, 128 So.3d 678 (2013).
[35] *See* LA. CODE CIV. PROC. art. 3654.
[36] *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395-396 (2018).

"reflects 'which judicial actor is better positioned' to make the decision."[37] If the issue involves the "interpretation of legal rules" the reviewing court is better positioned, and so considers the issue *de novo*.[38] "When the dispute would "immerse [the court] in case specific factual issues—compelling [it] to marshal and weigh evidence, make credibility judgments, and otherwise address ... multifarious, fleeting, special, narrow facts that utterly resist generalization" the reviewing court should "defer to the court that did the factfinding."[39] In a primarily factual mixed question, the standard of review is whether the bankruptcy court committed clear error.[40]

The question of whether to grant a motion for a new trial "is left to the sound discretion of the trial court."[41]

## <u>LAW AND ANALYSIS</u>

### I. The bankruptcy court did not err in analyzing the Falterman Heirs' state court claim under La. C.C.P. 3654.

Appellants argue the bankruptcy court erred when it analyzed the claims of the Falterman Heirs in their state court petition under La. C.C.P. 3654. This argument by the Coupels has two components: first, that the state court petition was a petitory action brought under La. C.C.P. article 3651, and, second, that this petitory action constituted a "judicial confession" on the part of the Falterman Heirs that they did not possess the Disputed Property.

---

[37] *Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743, 749 (5th Cir. 2023) (quoting *Miller v. Fenton*, 474 U.S. 104, 114 (1985)).
[38] *Id.* (quoting *U.S. Bank Nat. Ass'n*, 583 U.S. at 395-396).
[39] *Id.*
[40] *Id.* at 749-750 (quoting *Trendsetter HR L.L.C. v. Zurich Am. Ins. Co.*, 949 F.3d 905, 910 (5th Cir. 2020)).
[41] *Turner v. Avery*, 198 B.R. 192, 196 (E.D. La. 1996) (quoting 11 WRIGHT AND MILLER'S FEDERAL PRACTICE & PROCEDURE § 2808 (3d ed.)), *aff'd sub nom. Matter of Avery*, 109 F.3d 765 (5th Cir. 1997).

The bankruptcy court found as a matter of law that, based on the relief requested, the Falterman Heirs' petition is properly characterized as a request for declaratory relief under La. C.C.P. article 3654.[42] As a finding of law, the standard of review is *de novo*.

Under La. C.C.P. article 3655, a "possessory action" is brought by a possessor of immovable property to be maintained in or restored to the possession of his property.[43] Conversely, under La. C.C.P. article 3651, a "petitory action" is brought by a person who claims ownership of, but who does not have the right to possess, immovable property."[44] An action for declaratory relief under La. C.C.P. article 3654, in contrast to both the possessory and the petitory actions, permits a plaintiff in possession to "rais[e] issues of possession and ownership in the same action."[45]

The Falterman Heirs' original state court petition did not characterize the action as a declaratory judgment action, but in the state court petition the Falterman Heirs asserted both their possession and ownership of the property.[46] The bankruptcy court noted in its Memorandum Opinion and Order that "[e]very pleading must be construed as to do substantial justice[;] [a]ccordingly, courts look beyond mere headings and terminology used on or in pleadings to determine the circumstances and the true nature of the suit."[47] Since the Falterman Heirs "allege in their petition that they are in the possession of the Disputed Property, and [because] they seek determinations regarding

---

[42] *Adversary Proceeding*, R. Doc. 92 at p. 21.
[43] LA. CODE CIV. PROC. art. 3655.
[44] LA. CODE CIV. PROC. art. 3651.
[45] *Lafourche Realty Co. v. Duard Eymard Co.*, 638 So. 2d 1138, 1139 (La. App. 1 Cir. 1994). *See* LA. CODE CIV. PROC. ANN. art. 3654. *See also* LA. CODE CIV. PROC. ANN. art. 1871 (In a declaratory judgment, the court "may declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . . The declaration shall have the force and effect of a final judgment or decree.").
[46] *See* R. Doc. 1-1 at p. 1 ("Plaintiffs and their ancestors in title have been in possession of the property since 1914 and also owned the property and were in possession of it prior to the sale to Ernest Braud.").
[47] *Adversary Proceeding*, R. Doc. 92 at p. 21 (quoting *Heirs of John Beckwith LLC v. Sims*, 315 So.3d 306, 314 (La. App. 4 Cir. 2021)).

such possession, ownership, and servitude," the bankruptcy court concluded that the state court petition is properly characterized as a declaratory judgment.[48]

On November 21, 2016, the Falterman Heirs filed a motion for summary judgment in the State Court Action styled as a "Motion for Summary Judgment on Petitory Action[.]"[49] Based on this caption, Appellants make two rather ambitious arguments. First, they argue that the caption shows the state court petition is a petitory action.[50] Second, they argue that, when the Falterman Heirs used this caption to refer to their state court petition, they judicially confessed to lacking possession of the Disputed Property.[51] So this argument goes, the bankruptcy court erred when it failed to take judicial notice of this alleged confession, and consequently it erred again when it allowed the question of possession of the Disputed Property to be tried.[52]

Appellants' argument that the state court petition is a petitory action, making La. C.C.P. article 3654 inapplicable, lacks merit. In *Heirs of John Beckwith LLC*, the Louisiana Fourth Circuit Court of Appeal upheld a trial court finding that a state court petition styled as neither a possessory nor a petitory action was in substance an action for a declaratory judgment due to the relief the plaintiff requested.[53] As the bankruptcy court noted in its Memorandum Opinion and Order, "[e]very pleading must be construed as to do substantial justice[;] [a]ccordingly, courts look beyond mere headings and terminology used on or in pleading to determine the circumstances and the true nature of the suit."[54] Reviewing the bankruptcy court's conclusion of law *de novo*, the Court finds

---

[48] *Id.*
[49] *See* R. Doc. 8-1 at p. 1.
[50] *See id.*
[51] R. Doc. 8 at pp. 1-3. *See* LA. CIV. CODE. ART. 1853.
[52] R. Doc. 8 at pp. 1-3.
[53] *Heirs of John Beckwith LLC v. Sims*, 315 So.3d 306, 314 (La. App. 4 Cir. 2021).
[54] *Adversary Proceeding*, R. Doc. 92 at p. 21 (quoting *Heirs of John Beckwith LLC*, 315 So.3d at 314.).

the bankruptcy court did not err when it concluded the substance of the petition demonstrated it was a declaratory judgment action under La. C.C.P. article 3654 because the state court petition clearly sought a determination of the Falterman Heirs' possession and ownership of the Disputed Property.

Appellants' argument that the caption constitutes a judicial confession by the Falterman Heirs that they did not have possession of the Disputed Property also lacks merit. In *Heirs of John Beckwith LLC,* the Fourth Circuit also specifically rejected the contention that ambiguity in the style of the pleadings constituted any sort of "judicial confession" as to the substance of the legal dispute.[55] In the Falterman Heirs' motion for summary judgment, which referred to the petition as a "petitory action," they asserted they "have been in possession of [the Disputed Property] continuously for well over 100 years" and hold "ownership of a title which stretches back to the separation from the sovereign."[56] The bankruptcy court did not err when it found this failed to constitute a judicial confession that the Falterman Heirs were not in possession of the Disputed Property, nor did the bankruptcy court err when it permitted the issue of possession to be tried.

## II. The bankruptcy court did not err in declining to analyze the Coupels' claim to the Disputed Property under La. C.C. art. 3475.

Appellants argue the bankruptcy court committed an error of law because it "failed to apply La. C.C. 3475 to the facts of the present case."[57] La. C.C. 3475 sets out the requirements for acquisitive prescription under Louisiana law, namely "possession of ten

---

[55] *Heirs of John Beckwith LLC*, 315 So.3d at 314 n. 8. *See* LA. CIV. CODE. ART. 1853 ("A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.").
[56] *See* R. Doc. 8-1 at p. 2.
[57] R. Doc. 6 at p. 15.

years, good faith, just title, and a thing susceptible of acquisition by prescription."[58] In its Memorandum Opinion and Order, the bankruptcy court concluded that the Coupels failed to demonstrate they acquired the Disputed Property via acquisitive prescription because they were not in possession and were not in good faith.[59]

The bankruptcy court concluded as a matter of law that the Falterman Heirs have "held title and continuous possession of the Disputed Property since 1914."[60] The bankruptcy court found as a fact that the Falterman family, and thus, the Falterman Heirs, have owned the property since 1914.[61] Between 1914 and 2003, the Faltermans have used the property as a pasture for cattle and have leased it for mineral exploration.[62] The Falterman family has paid taxes on the Disputed Property for every year since 1914, except 2014.[63] The bankruptcy court noted that "once possession has been established, it is 'retained by the intent to possess as owner even if the possessor ceases to possess corporeally'"[64] and that a transferee who receives title to a property from a transferor also receives the possession of the transferor "[a]s long as there is no interruption of possession[.]"[65]

The Coupels argue they interrupted the Falterman Heirs' possession of the Disputed Property.[66] The bankruptcy court found as a question of fact that the Coupels had used the Disputed Property only for limited purposes since 2003, specifically for hunting and blackberry picking.[67] Analyzing these facts, the bankruptcy court concluded

---

[58] *See* LA. CIV. CODE. ART. 3475.
[59] *Adversary Proceeding*, R. Doc. 92 at p. 26.
[60] *Id.* at p. 24.
[61] *Id.* at p. 9. *See Adversary Proceeding*, Trial Transcript, R. Doc. 88 23:23-36:18.
[62] *Id.* at pp. 9-10. *See Adversary Proceeding*, Trial Transcript, R. Doc. 88 38:04-51:24.
[63] *Id.* at p. 13. That year, Natalie Coupel paid taxes on the property. The Faltermans resumed paying afterward. *Id.*
[64] *Id.* at p. 23 (quoting LA. CIV. CODE. ART. 3431).
[65] *Id.* (citing LA. CIV. CODE. ARTS. 3441 & 3442).
[66] *See* R. Doc. 6 at p. 15.
[67] *Adversary Proceeding*, R. Doc. 92 at p. 20.

that there had been no interruption of the Falterman Heirs' continuous possession of the Disputed Property[68] and that the record further "conveys that the Coupels have not possessed the Disputed Property for any amount of time."[69] The bankruptcy court reasoned that, while the record includes some evidence that "the Coupels occasionally used the Disputed Property for hunting[,] [s]uch use does not amount to an eviction sufficient to interrupt the Falterman Heirs' possession" under article 3433.[70]

The Court finds that the bankruptcy court's conclusion that the Falterman Heirs had not lost possession under La. C.C. article 3433—and thus that the Coupels could not establish an acquisitive prescription claim under article 3475—is a mixed question of law and fact. Accordingly, to the extent the bankruptcy court's determination deals with factual issues, the Court must give deference, and to the extent the bankruptcy court's determination involves the interpretation of legal rules, the Court must consider the issue *de novo*.[71] The bankruptcy court's conclusions that the Falterman Heirs have held continuous possession of the Disputed Property since 1914 and that the Coupels have not possessed the Disputed Property for any amount of time are more factual in nature than legal and would not be reversed in the absence of clear error. Conversely, the bankruptcy court's determination that the Coupels use of the property did not constitute eviction of the Falterman Heirs under article 3433 is a question of law and is subject to *de novo* review.

Appellants argue the factual conclusion that the Coupels never possessed the Disputed Property constitutes error, because testimony at trial "was to the effect that the

[68] *Id.* at p. 24.
[69] *Id.* at p. 26 (emphasis omitted).
[70] *Id.* at p. 25.
[71] *Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743, 749 (5th Cir. 2023) (quoting *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395-396 (2018)).

Coupels were the only persons who did anything with the [Disputed Property].[72]" The Appellants' brief does not cite to the trial transcript for this testimony. As far as the Court can tell, this reference is to Cody Coupel's testimony that he hunts on the Disputed Property[73] and Natalie Coupel's testimony that the Coupels are the only ones who have been maintaining the Disputed Property.[74] The bankruptcy court found as a question of fact that Mr. Coupel's testimony was "useful as to the current state of the Disputed Property, but … of limited use otherwise due to [his] lack of direct knowledge regarding ownership of the Disputed Property."[75] Accordingly, the bankruptcy judge gave little weight to his testimony.[76] The bankruptcy court found Ms. Coupel to be an earnest witness and credible as to the timing of the Coupel's property purchases, but gave little weight to her testimony "to the extent her testimony constitutes legal analysis of immovable property transfers or title analysis."[77]

Appellants point to one witness, Emily Bradford, who testified she "never saw anybody from the Falterman family do anything with the [Disputed Property]."[78] The Appellants' brief does not cite to the trial transcript for this testimony either. As far as the Court can tell, the citation to the Emily Bradford testimony refers to her statement that she did not recall the Coupels being present on the Disputed Property "since [she had] been out there."[79] It is unclear from Ms. Bradford's testimony what range of time she is describing.[80] The bankruptcy court found that Emily Bradford's testimony was "useful as to the current state of the Disputed Property, but … of limited use otherwise due to [her]

[72] R. Doc. 6 at p. 15.
[73] *Adversary Proceeding*, Trial Transcript, R. Doc. 88 at 123:22-125:8.
[74] *Adversary Proceeding*, Trial Transcript, R. Doc. 88 at 144:24-145:5.
[75] *Adversary Proceeding*, R. Doc., 92 at p. 4.
[76] *Id.*
[77] *Id.*
[78] R. Doc. 6 at p. 15.
[79] *Adversary Proceeding*, Trial Transcript, R. Doc. 88 at 171:24-172:1.
[80] *See id.*

lack of direct knowledge regarding ownership of the Disputed Property."[81] Accordingly, the bankruptcy judge gave little weight to her testimony.[82]

Appellants also argue that the Falterman Heirs' expert witness Randall Grip presented photographic evidence of the Disputed Property dating from the mid-1960s but "had nothing to offer to show that the Faltermans had done anything with the property prior to 2001."[83] The bankruptcy judge found Mr. Grip to be a credible and knowledgeable witness.[84]

Reviewing the trial testimony and the bankruptcy court's decision that the Falterman Heirs have held continuous title and possession of the Disputed Property since 1914 and that the Coupels have not possessed the property for any amount of time, the Court finds the bankruptcy judge did not commit clear error of fact.

Reviewing the bankruptcy court's legal analysis of the Coupel's claims under La. C.C. articles 3433 and 3475 *de novo*, the Court finds the bankruptcy court did not err in finding the Coupels were required to have possession and good faith to acquire the Disputed Property by way of acquisitive prescription. Louisiana law defines acquisitive prescription as "a mode of acquiring ownership or other real rights by possession for a period of time."[85] The Civil Code articles on acquisitive prescription relevant to this appeal are:

> **Article 3433. Loss of possession.** Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation.
>
> **Article 3475. Requisites.** The requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing

---

[81] *Adversary Proceeding*, R. Doc., 92 at p. 4.
[82] *Id.*
[83] R. Doc. 6 at p. 15. *See Adversary Proceeding*, R. Doc. 88 at 82:1-4.
[84] *Adversary Proceeding*, R. Doc. 92 at p. 3.
[85] LA. CIV. CODE. ART. 3446.

susceptible of acquisition by prescription.

Acquisitive prescription requires possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.[86] As cited by the bankruptcy court, the Louisiana First Circuit Court of Appeal in *Mire v. Crowe* interpreted Article 3433 to require that "for a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged."[87] As further cited by the bankruptcy court, the Louisiana Fourth Circuit Court of Appeal in *Heirs of John Beckwith LLC* held that "use of [a] property by fishing, hunting, and bird watching . . . are insufficient acts of possession for purposes of acquisitive prescription or to deprive [a possessor] of [his] ownership of the property."[88]

Appellants point neither to law that would contradict this interpretation of Article 3433 nor to evidence in the record that the Coupels' actions constitute eviction of the Falterman Heirs under Article 3433. The bankruptcy court found that the Coupels had made limited use of the property since 2003, but that such limited use did not suffice to establish possession under Louisiana law. Without possession, the Coupels cannot prevail on any claim under Article 3475 for ownership of the Disputed Property by acquisitive prescription. The bankruptcy court did not err in its findings of law.

## III. The bankruptcy court did not err in denying the Coupel's motion for a new trial.

Federal Rule of Civil Procedure 59(a)(1)(B), made applicable to bankruptcies via Federal Rule of Bankruptcy Procedure 9023, permits a court to grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal

---

[86] LA. CIV. CODE. ART. 3475.
[87] *Mire v. Crowe*, 439 So. 2d 517, 522 (La. App. 1 Cir. 1983).
[88] *Heirs of John Beckwith LLC v. Sims*, 315 So.3d 306, 330 (La. App. 4 Cir. 2021).

court." Fifth Circuit case law provides that a Rule 59 motion may be granted if the court finds the verdict is against the weight of the evidence, the damages awarded are excessive or inadequate, the trial was unfair, or prejudicial error was committed.[89] A motion for a new trial must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued."[90] Moreover, "[a] motion for a new trial pursuant to Rule 59 is an extraordinary remedy that should be used sparingly."[91] "A motion for a new trial is left to the sound discretion of the trial court."[92]

In their motion for a new trial, the Coupels did not present newly-discovered evidence, but instead provided older pleadings relevant to their litigation of the Disputed Property.[93] To prevail, then, the Coupels must clearly establish a manifest error of law or fact. In their motion for a new trial, the Coupels argue that the bankruptcy court made such an error, first, when it stated that the Coupels could not have "reasonably believed" they owned a road connected to the Disputed Property and, second, when the bankruptcy court adopted the Taracena Survey.[94]

Neither contention fits the criteria for granting a new trial motion, and the Court finds the bankruptcy court did not abuse its discretion in denying the new trial motion. First, Appellants attached to their new trial motion a 2006 state court judgment as

---

[89] *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); *Lucas v. Am. Mfg. Co.*, 630 F.2d 291, 293 (5th Cir. 1980).

[90] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Newly discovered evidence must be of facts existing at the time of trial, and the moving party must have been excusably ignorant of the facts despite using due diligence to learn about them. 11 WRIGHT AND MILLER'S FEDERAL PRACTICE & PROCEDURE § 2808 (3d ed.). If the facts were known to the party and no excusable ignorance can be shown, a new-trial motion will not be granted. *Id.*

[91] *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000).

[92] *Turner v. Avery*, 198 B.R. 192, 196 (E.D. La. 1996) (quoting 11 WRIGHT AND MILLER'S FEDERAL PRACTICE & PROCEDURE § 2803 (2d ed.)., *aff'd sub nom. Matter of Avery*, 109 F.3d 765 (5th Cir. 1997).

[93] *See Adversary Proceeding*, R. Docs. 95 and 100.

[94] *Adversary Proceeding*, R. Doc. 95 at p. 4-6.

evidence of their reasonable belief in ownership of the Road connected to the Disputed Property.[95] This judgment was available to the Coupels but was not introduced into evidence at trial.[96] This is not newly-discovered evidence and, as such, this is precisely the sort of argument that "could, and should, have been made before the judgment issued."[97] Second, Appellants argue the bankruptcy court was wrong to adopt the Taracena Survey, as Mr. Taracena produced inconsistent land surveys in the past.[98] This is rehashing an argument from trial and, furthermore, amounts neither to an error of fact nor to an error of law. The bankruptcy court, first, admitted the Taracena Survey as competent evidence.[99] The bankruptcy court, second, found the testimony of the Coupel's competing land surveyor witness Alan Woodward not to be credible and gave no weight to his testimony.[100] The bankruptcy court accordingly found that "the Taracena Survey stands as unchallenged and unopposed competent evidence."[101] In essence, the adoption of the Taracena Survey and the rejection of the Woodard testimony were credibility determinations. Federal Rule of Civil Procedure 52(a)(6) instructs that "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Reviewing the credibility determinations of the bankruptcy judge, the Court finds the bankruptcy court did not commit clear error.

---

[95] *Adversary Proceeding*, R. Doc. 95-1.

[96] *See Adversary Proceeding*, R. Doc. 95 at p. 4.

[97] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Furthermore, Appellants present the judgment only as evidence that contradicts the bankruptcy court's statement: "Objectively, the Coupels could not have reasonably believed that they owned the Road or the Disputed Property." *Adversary Proceeding*, R. Doc. 92 at pp. 26-27 n. 10. This allegedly erroneous statement is dicta, because the bankruptcy court's finding did not rest on its conclusion. As such, even if the Court were to find the statement a manifest error, it would have no effect on the bankruptcy court's judgment.

[98] *Adversary Proceeding*, R. Doc. 95 at p. 5-6.

[99] *Adversary Proceeding*, R. Doc. 92 at p. 28.

[100] *Id.* at p. 4.

[101] *Id.* p. 28.

On the evidence presented on the motion for a new trial, the Coupels have not established that the bankruptcy court made an error of fact or law.[102] The bankruptcy court did not abuse its discretion when it denied the Coupels' motion for a new trial.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the Bankruptcy Court's December 31, 2025[103] and April 1, 2026[104] orders are **AFFIRMED.**

**New Orleans, Louisiana, this 15th day of October, 2026.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[102] *See Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) ("[T]he clearly erroneous standard of review following a bench trial requires even 'greater deference to the trial court's findings when they are based upon determinations of credibility'" (quoting Fed. R. Civ. P. 52(a)(6))).
[103] *Adversary Proceeding*, R. Doc. 93.
[104] *Adversary Proceeding*, R. Doc. 101.